**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|                             |     |                           |
| --------------------------- | --- | ------------------------- |
|                             | )   |                           |
|                             | )   |                           |
| **ANTHONY BROOKINS,**       | )   |                           |
|                             | )   |                           |
| Petitioner,                 | )   |                           |
|                             | )   | CIVIL NO. 12-12           |
| v.                          | )   | (CRIMINAL NO.  08-166)    |
|                             | )   |                           |
| **UNITED STATES OF AMERICA,** | ) |                           |
|                             | )   |                           |
| Respondent.                 | )   |                           |
|                             | )   |                           |
|                             | )   |                           |

## MEMORANDUM OPINION

**CONTI, District Judge.**

### I.     Introduction

Pending before the court is a motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255 (the "§ 2255 motion") (ECF No. 122)[1] and a motion for new trial pursuant to Federal Rule of Criminal Procedure 33(b)(1) (the "Rule 33(b)(1) motion") (ECF No. 128), filed by petitioner Anthony Brookins ("Brookins" or "petitioner"). Upon reviewing the submissions of the parties, including petitioner's § 2255 motion,[2] petitioner's Rule 33(b)(1) motion, the government's response to petitioner's § 2255 motion (ECF No. 127) and the government's response to petitioner's Rule 33(b)(1) motion (ECF No. 133), the

---

[1] The docket references ("ECF No.") in this opinion are references to the docket in the criminal case, Criminal No. 08-166.

[2] Petitioner filed a sixteen-page brief titled "Memorandum of Law in Support of § 2255 Petition Title 28 U.S.C." (ECF No. 129).

court will deny petitioner's § 2255 motion and Rule 33(b)(1) motion for the reasons set forth herein.

## II.    Background

On April 15, 2008, a federal grand jury returned a two-count indictment charging petitioner with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and with possession with intent to distribute 50 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). (ECF No. 1.)  On October 22, 2008, a federal grand jury returned a superseding indictment charging petitioner with possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (count one) and with possession with intent to distribute 50 grams or more of a cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii) (count two). (ECF No. 38.) Petitioner entered a plea of not guilty to both counts. (ECF No. 43.)

On May 14, 2009, a jury convicted petitioner on both counts. (ECF No. 78.)  The presentence investigation report ("PIR") recommended a base offense level of thirty and a two-point enhancement for the use of a revolver, yielding a total offense level of thirty-two. The PIR concluded and this court agreed, however, that petitioner was a career offender. As such, petitioner's total offense level was thirty-seven with a criminal history category of VI.  The guideline range for both counts was 360 months to life imprisonment, which included a mandatory minimum term of 240 months for the conviction at count two. On April 1, 2010, petitioner was sentenced by this court to 120 months' imprisonment at count one of the superseding indictment and 240 months' imprisonment at count two of the superseding indictment, to be served concurrently, followed by a three-year term of supervised release at

count one of the superseding indictment and a ten-year term of supervised release at count two at the superseding indictment, to be concurrently served. (ECF No. 102.)

On April 7, 2010, petitioner filed a timely notice of appeal of his sentence to the United States Court of Appeals for the Third Circuit. (ECF No. 103.) On January 24, 2011, the Court of Appeals for the Third Circuit affirmed the sentence imposed by this court, finding that "the jury's verdict convicting Brookins on both counts was supported by substantial evidence." United States v. Brookins, 413 F. App'x 509, 514 (3d Cir. 2011) (ECF No. 119.)

On January 5, 2012, the clerk of court received and filed petitioner's timely *pro se* motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255.[3] (ECF No. 122.) In his § 2255 motion, petitioner lists three general grounds for his claim "that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Petitioner alleges (1) ineffective assistance of counsel based upon five grounds: (a) counsel's failure to raise a selective prosecution claim; (b) counsel's failure to request a private investigator; (c) counsel's failure to request use immunity for defense witness William Quarrels; (d) counsel's failure to have the search warrant properly analyzed by a handwriting expert; and (e) counsel's failure to review the authenticity of recorded telephone conversations and not making them available to petitioner for his review; (2) prosecutorial misconduct based upon the government's suppression of material impeachment evidence relating to its "key" witness, Dolores Woods ("Woods"),[4] in violation of Brady v. Maryland, 373 U.S. 83

---

[3] The court is mindful that a *pro se* movant cannot be held to the same stringent standards as attorneys. See United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007). Thus, a habeas petition should be liberally construed. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998). The court considers petitioner's § 2255 motion with these principles in mind.

[4] At the time of petitioner's arrest on February 7, 2007, Dolores Woods was petitioner's live-in girlfriend and the mother of one of his children. The government asserts in its response to

(1963); and (3) a violation of his Sixth Amendment rights based upon the district court limiting his ability to cross-examine witness Woods. (ECF No. 122.)

On January 10, 2012, the court issued a notice that the petitioner's motion to vacate was filed and directed the government to file its response and a brief in opposition on or before February 24, 2012. On February 24, 2012, the government filed its response in opposition. (ECF No. 127.) In its response, the government acknowledged the timely filing of petitioner's § 2255 motion. (ECF No. 127.)

On March 22, 2012, the clerk of court received and filed petitioner's timely *pro se* motion for new trial pursuant to Federal Rule of Criminal Procedure 33(b)(1). (ECF No. 128.) In his Rule 33(b)(1) motion, petitioner raises the same prosecutorial misconduct claim asserted in his § 2255 motion. Petitioner alleges that the government suppressed material impeachment evidence in violation of Brady.[5] (ECF No. 128.)

On March 27, 2012, the court issued a notice that the petitioner's motion for a new trial was filed and directed the government to file its response and a brief in opposition on or before

---

petitioner's Rule 33(b)(1) motion that "although Woods presented important testimony, she certainly was not a 'key' witness for the government, since substantial evidence of petitioner's drug dealing was presented well before she testified, and that she did not testify pursuant to any formal cooperation or immunity agreement." (ECF No. 133.)

[5] Petitioner's Brady claim is brought pursuant to both Federal Rule of Criminal Procedure 33(b)(1) and 28 U.S.C. § 2255. The parties did not specifically address whether Rule 33 is the proper vehicle for raising a Brady claim or whether such a claim must be cabined within the jurisprudence of 28 U.S.C. § 2255. It appears that Brady claims are cognizable under Rule 33. See United States v. Dansker, 561 F.2d 485, 486 (3d Cir. 1977) (holding that defendant's Brady claims were cognizable in a motion for a new trial under the "newly discovered evidence" clause of Rule 33). In its opinion affirming petitioner's sentence, the Court of Appeals for the Third Circuit instructed petitioner that "the proper manner to raise a Brady claim is through a motion for a new trial in the district court pursuant to Federal Rule of Criminal Procedure 33." United States v. Brookins, 413 F. App'x 509, 513 (3d Cir. 2011) (citing United States v. Rice, 607 F.3d 133, 142 (5th Cir. 2010); United States v. Chorney, 63 F.3d 78, 80 (1st Cir. 1995)). As a result, petitioner's Brady claim will be analyzed under Federal Rule of Criminal Procedure 33(b)(1) and not under 28 U.S.C. § 2255.

April 5, 2012. (ECF No. 130.) On April 3, 2012, the government filed a motion for extension of time to file a response to petitioner's motion for new trial, which the court granted on April 5, 2012. (ECF No. 131.) On April 19, 2012, the government filed its response in opposition. (ECF No. 133.) Petitioner's § 2255 and Rule 33(b)(1) motions are now ripe to be decided by the court.

### III.  Standard of Review

#### A.  Standard for Deciding a Motion to Vacate, Set Aside, or Correct the Sentence Pursuant to 28 U.S.C. § 2255

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motion, files and records of the case show conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255 ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). The threshold the petitioner must meet to obtain an evidentiary hearing is considered to be "reasonably low." Id. at 546. With this in mind, in considering a motion to vacate a defendant's sentence, the "district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" Johnson v. United States, 294 F. App'x 709, 710 (3d Cir. 2008) (quoting Booth, 432 F.3d at 545-36). The district court, however, without further investigation may dispose of "vague and conclusory allegations contained in a § 2255 petition." Johnson, 294 F. App'x at 710 (quoting United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000)).

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside or correct the sentence

upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

28 U.S.C. § 2255(a). In <u>Hill v. United States</u>, 368 U.S. 424 (1962), the Supreme Court of the United States read the statute as stating four grounds upon which relief can be granted:

(1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack."

<u>Id.</u> at 426-27 (quoting 28 U.S.C. § 2255(a)). The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**B. Standard for Deciding a Motion for New Trial Pursuant to Rule 33**

Under Rule 33 of the Federal Rules of Criminal Procedure, a defendant can file a motion requesting the court "to vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Specifically, Rule 33(b)(1) permits a defendant to file a motion for a new trial based upon "newly discovered evidence" within three years after the verdict or finding of guilty. FED. R. CRIM. P. 33(b)(1). If the district court reaches the merits of a motion for a new trial on the basis of newly discovered evidence, it may grant the motion if five requirements are satisfied:

"(1) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied on, must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal."

United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006) (quoting United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir. 1976)).  The movant has a 'heavy burden' of proving each of these requirements. Cimera, 459 F.3d at 458.  The decision to grant or deny a motion for a new trial under Federal Rule of Criminal Procedure 33 is committed to the sound discretion of the district court. Gov't of the Virgin Islands v. Lima, 774 F.2d 1245, 1250 (3d Cir. 1985).

Generally, Rule 33 motions for a new trial based on newly discovered evidence require that "the evidence must create an actual probability that an acquittal would have resulted if the evidence had been available." Cimera, 459 F.3d at 458.  When the newly discovered evidence is allegedly suppressed in violation of Brady v. Maryland, however, courts typically apply the well-established standard requiring that the evidence must create a "reasonable probability" of a different outcome, a somewhat easier burden for defendant to shoulder. See, e.g., United States v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005).  Thus, the standard used for petitioner's Rule 33(b)(1) motion for a new trial – framed as a Brady claim – is the Brady reasonable probability standard. Id.

## IV.  Discussion

Petitioner premises his § 2255 motion and Rule 33(b)(1) motion on numerous allegations, all of which suggest "that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).  Some of the allegations are vague and conclusory and can be disposed of without further investigation. See Johnson, 294 F. App'x at 710. All the claims raised by petitioner may be grouped into three categories: (1) ineffective assistance of counsel, (2) prosecutorial misconduct, and (3) trial court error.  Each of these categories will be dealt with in turn.

**A. Timeliness and Propriety of Petitioner's § 2255 Motion**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a one-year period of limitation applies to a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255. See Lloyd v. United States, 407 F.3d 608, 611 (3d Cir. 2005). Section 2255 states, in relevant part, "A 1-year period of limitation shall apply to a motion under this section." 28 U.S.C. § 2255(f). The statute provides that the limitations period shall run from the latest of the following:

> (1)      the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

In the present case, that period began to run on "the date on which the judgment of conviction [became] final…." 28 U.S.C. § 2255(f)(1). Petitioner directly appealed his sentence to the Court of Appeals for the Third Circuit, which affirmed his sentence on January 24, 2011. (ECF No. 119.) While petitioner did not raise an ineffective assistance of counsel claim on direct appeal, this is not dispositive of petitioner's § 2255 motion because "there is no procedural default for failure to raise an ineffective assistance claim on direct appeal." Massaro v. United States, 538 U.S. 500, 503 (2003). Petitioner did not file a writ of certiorari with the Supreme Court of the United States appealing the court of appeals' decision. In establishing when

petitioner's judgment becomes "final" for the purposes of filing a motion under 28 U.S.C. § 2255, the statute of limitations begins to run from "the date on which the defendant's time for filing a timely petition for certiorari review expires." Kapral v. United States, 166 F3d 565, 570-71 (3d Cir. 1999). A defendant has ninety days from the date on which the court of appeals affirmed the judgment of conviction to file a petition for a writ of certiorari. Id. at 571. Thus, the one-year statute of limitations for petitioner's § 2255 motion began to run ninety days from January 24, 2011, the date when his judgment became final, and expired one year thereafter on April 25, 2012.[6]

In its response to petitioner's § 2255 motion, the government acknowledges the timely filing of petitioner's § 2255 motion. (ECF No. 127 at 2.) In the last paragraph of the government's response to petitioner's § 2255 motion (ECF No. 127 at 16), however, the government asserts that "petitioner should not be permitted to amend his § 2255 motion, since the statute of limitations on a 2255 petition is one year from the date of a finalized conviction. The conviction became final on January 24, 2011, and a Motion to Amend a § 2255 motion is not permissible after the limitation period has expired." (ECF No. 127) (citing 28 U.S.C. § 2255(f); United States v. Duffus, 174 F.3d 333, 336 (3d Cir. 1999)). This argument appears to be in response to petitioner's filing on May 22, 2012 of a Motion for Leave to File Amended Petition (ECF No. 124).[7]

---

[6] Pursuant to Federal Rule of Civil Procedure 6(a), "federal holidays and weekends are only excluded from the computation of periods less than eleven days… If the last day of the 90 day period is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." FED. R. CIV. P. 6(a). As such, petitioner's ninety-day period to file a petition for a writ of certiorari was extended from Sunday, April 24, 2012 to Monday, April 25, 2012, and the period includes all legal holidays.

[7] At the time petitioner filed his § 2255 motion (ECF. No 122), he contemporaneously filed several other motions. These motions include a Motion to Appoint Counsel (ECF No. 123), a

The government's argument that petitioner should not be permitted to amend his § 2255 motion is unavailing for two reasons. First, as explained above, petitioner's judgment became "final," for the purposes of filing a motion under 28 U.S.C. § 2255, ninety days after the court of appeals affirmed the judgment of conviction on January 24, 2011. Petitioner did not file an amended petition; rather, on March 22, 2012, he filed a memorandum of law in support of the § 2255 motion (ECF. No. 129.) Kapral, 166 F3d at 570-71. There is no bar to the court considering a memorandum of law even if it was filed after January 2012.

Second, the Court of Appeals for the Third Circuit has held that the relation-back rule may be applied to motions to vacate to the extent amendments seek to amplify or clarify timely filed claims. Thomas, 221 F.3d 430 (3d Cir. 2000). Under Rule 15 of the Federal Rules of Civil Procedure, an amendment which, by way of additional facts, clarifies or amplifies a claim or theory in the petition may, in the district court's discretion, relate back to the date of that petition if and only if the petition was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case. Thomas, 221 F.3d at 431. Petitioner's memorandum of law in support of the § 2255 motion does not seek to amend his original § 2255 motion; rather, it sets forth facts in support of the motion and cites to applicable law based on the same "conduct, transaction, or occurrence as alleged in the original complaint." Id. at 433. The Court of Appeals for the Third Circuit has recognized that "[a] leave to amend should be freely granted unless there is evidence of 'undue delay, bad faith…or undue prejudice to the opposing

Motion for Leave to File Amended Petition (ECF No. 124), and a Motion to Proceed In Forma Pauperis (ECF No. 125.) The Motion for Leave to File Amended Petition (ECF No. 124) will be denied as moot because petitioner did not specify additional grounds for relief and did not submit any additional grounds for relief. The Motion to Appoint Counsel (ECF No. 123) and the Motion to Proceed In Forma Pauperis (ECF No. 125) will be denied as moot in light of petitioner's § 2255 motion being denied.

party by virtue of allowing the amendment.'" <u>Duffus</u>, 174 F.3d at 337 (citing <u>Forman v. Davis</u>, 371 U.S. 178, 182 (1962)).

Even if the government were to argue successfully that petitioner's memorandum of law in support of the § 2255 motion was in effect an amended petition filed after the expiration of the one-year statute of limitations prescribed by the AEDPA, petitioner's memorandum of law may still be considered by the court because petitioner timely filed his § 2255 motion asserting at least five ineffective assistance of counsel claims, and the memorandum of law in support merely clarifies the claims initially made. <u>Duffus</u>, 174 F.3d at 337  Petitioner did not raise any new claims in his memorandum of law in support of the § 2255 motion. The government had notice of petitioner's timely claims and is not prejudiced by virtue of allowing the filing of petitioner's memorandum of law in support of the § 2255 motion to clarify the claims initially and timely made in his § 2255 motion. In line with <u>Thomas</u> and <u>Duffus</u>, this court will consider petitioner's memorandum of law to clarify petitioner's § 2255 motion.

### B. Ineffective Assistance of Counsel Claims

#### 1. General Framework

In his § 2255 motion, petitioner argues that his trial and appellate counsel, Stephen Israel ("Israel"), was ineffective for several reasons. (ECF Nos. 122, 129.)  To support a claim that "counsel's assistance was so defective as to require reversal of conviction," <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), a petitioner must make two showings.  "[A] habeas petitioner claiming a deprivation of his or her Sixth Amendment right to effective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused the petitioner prejudice." <u>Ross v. Dist. Att'y of the Cnty. of Allegh.</u>, 672 F.3d 198, 210 (3d Cir. 2012) (citing <u>Strickland</u>, 466 U.S. at 687). "To show deficient

performance, 'a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness…. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Ross, 672 F.3d at 210 (quoting Harrington v. Richter, 131 S.Ct. 770, 787 (2011)). "'With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Ross, 672 F.3d at 210 (quoting Richter, 131 S.Ct. at 787). In other words, petitioner must show that there is a reasonable probability that his counsel's errors resulted in his conviction. See Glover v. United States, 531 U.S. 198, 203 (2001).

As both of these components must be demonstrated to support a claim of ineffective assistance of counsel, the absence of one negates the need to address the other. The United States Court of Appeals for the Third Circuit has directed district courts to address the prejudice prong of the analysis first. See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir. 1993), cert. denied, 510 U.S. 1028 (1993) ("Indeed, this Court has read Strickland as requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced the defendant.") (internal quotations and citations omitted).  The court of appeals in McAleese quoted the Court in Strickland as follows:

> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

McAleese, 1 F.3d at 171 (quoting Strickland, 466 U.S. at 697). The court, therefore, will examine the prejudice prong of the Strickland analysis before considering the deficient representation prong in analyzing petitioner's claims for ineffective assistance of counsel.

With respect to the deficient representation prong, "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected . . . if they are based on professional judgment." Strickland, 466 U.S. at 681. "The Supreme Court directs that our 'scrutiny of counsel's performance must be highly deferential' to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of tactical hindsight, might prove not to have best served his client's interests." United States v. Loughery, 908 F.2d 1014, 1018 (D.C. Cir. 1990) (quoting Strickland, 466 U.S. at 689).

In his § 2255 motion, petitioner asserts that Israel was deficient during pretrial proceedings based upon the following five allegations: (1) counsel's failure to raise a selective prosecution claim; (2) counsel's failure to request a private investigator; (3) counsel's failure to request use immunity for defense witness William Quarrels; (4) counsel's failure to have the search warrant properly analyzed by a handwriting expert; and (5) counsel's failure to review the authenticity of recorded telephone conversations and not making them available to petitioner for his review.[8] (ECF No. 122.) Most of petitioner's allegations regarding Israel's ineffectiveness

---

[8] In his § 2255 motion, petitioner raises three additional ineffective assistance of counsel claims: (a) failure to investigate government's evidence and use of prior conviction; (b) failure to investigate potential witness; and (c) failure to effectively research federal law. (ECF No. 122) Petitioner, however, did not set forth any support for these additional claims, and does not address them in his memorandum of law in support of the § 2255 motion. (ECF No. 129.) The

relate to Israel's pretrial tactics and strategy. Each of these bases will be analyzed under the <u>Strickland</u> test in turn.

### 2. Ground One: Failure to Raise Selective Prosecution Claim

The first ground for petitioner's § 2255 motion is that Israel "was ineffective for failing to raise a claim of selective prosecution, before trial, in violation of petitioner's right to equal protection of the laws." (ECF No. 129 at 6.) To determine whether petitioner was prejudiced by this alleged failure, the court will first consider whether there is a reasonable probability that the result of the proceeding would have been different.

A decision to prosecute is selective and violates the right to equal protection when it is made on a discriminatory basis with an improper motive. <u>United States v. Schoolcraft</u>, 879 F.2d 64, 68 (3d Cir. 1989). To establish selective prosecution, a defendant must demonstrate both that (1) persons similarly situated have not been prosecuted; and that (2) the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or to prevent the defendant from exercising a fundamental right. <u>Id.</u> The defendant bears the burden of proof, <u>id.</u>, and must establish each of these elements with "clear evidence" sufficient to overcome the presumption of regularity that attaches to decisions to prosecute, <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996). Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, a motion alleging a defect in the institution of the prosecution must be raised before trial. FED. R. CRIM. P. 12(b)(3)(A).

In an attempt to establish selective prosecution, petitioner asserts in his § 2255 motion that government witness Woods was similarly situated, he received disparate treatment, and his prosecution was improperly motivated. (ECF Nos. 122, 129 at 8.) Petitioner's arguments that

---

court will therefore summarily deny petitioner's § 2255 motion with respect to these claims. <u>See</u> <u>Johnson</u>, 294 F.App'x at 710.

other "similarly situated individuals were not prosecuted" lacks support. Schoolcraft, 879 F.2d at 68. Petitioner asserts that Israel was in possession of Jencks material before trial that contained information about Woods' involvement "in the same 'matter' in which petitioner was involved," and that "Woods was more culpable in committing the offenses than petitioner." (ECF No. 129 at 6.) Petitioner asserts that Woods should have been indicted and prosecuted in the same manner as he was and that Israel should have presented this issue in front of the district court before the start of trial. (ECF No. 129 at 6.) Petitioner's argument is unavailing because Woods was prosecuted by the Allegheny County District Attorney's Office for possession with intent to deliver a narcotic for the events that took place on February 7, 2007. The government asserts that this fact was known to petitioner prior to trial (ECF No. 133 at 25), and that Woods testified at petitioner's trial that she had been charged in the Allegheny County Court of Common Pleas and was awaiting trial. (TT 5/13/09 at 34.)

With respect to the second prong of a selective prosecution claim, petitioner fails to show that he received disparate treatment and that his prosecution was improperly motivated. Petitioner does not set forth any facts to show that the decision to prosecute him in federal court, and not Woods, was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or to prevent the defendant from exercising a fundamental right. Schoolcraft, 879 F.2d at 68. As such, petitioner's allegation that his prosecution was improperly motivated is insufficient, and petitioner does not otherwise point to "clear evidence" of a discriminatory effect or discriminatory intent. Armstrong, 517 U.S. at 464. Thus, petitioner's selective prosecution argument is meritless. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

Even if Israel had raised a selective prosecution claim based upon the facts alleged by petitioner, there is not a reasonable probability of a different outcome of petitioner's trial. Petitioner, therefore, is not entitled to relief on the ground of ineffectiveness of counsel for failure to raise a selective prosecution claim.

### 3. Ground Two: Failure to Timely Request a Private Investigator

The second ground for petitioner's § 2255 motion is that Israel "was ineffective for failing to timely request for a private investigator at pre-trial." (ECF No. 129 at 9.) Petitioner alleges that sometime between May 2008 and August 2008, he informed Israel about the government's intention to use a Verizon telephone statement addressed to petitioner, in conjunction with other "junk mail," to establish his residency at 515 Center Street where the contraband leading to petitioner's arrest was seized. (Id.) Petitioner argues that the telephone bill and other "junk mail" were the only evidence the government had to prove petitioner lived at 515 Center Street. (Id.) Petitioner asserts that he informed Israel that he did not activate the alleged telephone service at that address, and that someone other than petitioner may have used his personal information. (Id.) Petitioner requested Israel to hire a private investigator to obtain the telephone application to bolster his claim, and rebut the testimony of government witness Woods. He wanted to show that someone other than petitioner filled out the telephone application and that he did not live at 515 Center Street. (Id.) Petitioner asserts that Israel was deficient for ignoring his request until 2009, and that had he obtained the telephone application in 2008, the information in the application would have weakened the government's case and the outcome of the trial would have been different. (Id.)

Focusing on the second prong of the Strickland analysis, there can be no prejudice on this ground because petitioner did not demonstrate "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Ross, 672 F.3d at 210. Critically, a claim of ineffective assistance must identify the specific error counsel made. Conclusory allegations are not sufficient to support a petition or motion under § 2255. Blackledge v. Allison, 431 U.S. 63, 97 (1977); see Thomas, 221 F.3d at 437 (citing United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988) (reiterating that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court."); Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (a petitioner "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention.").

Petitioner's argument that Israel's failure to timely retain a private investigator to obtain the telephone application for the subject telephone and bill statement addressed to petitioner at 515 Center Street is not sufficient to "undermine confidence in the outcome." Strickland, 466 U.S. at 694. Petitioner's contention that the telephone bill statement addressed to him was the *only* evidence the government had to prove petitioner lived at 515 Center Street is incorrect. The government identified in its response to petitioner's Rule 33(b)(1) motion for new trial substantial evidence demonstrating petitioner's residency at 515 Center Street. (ECF No. 133 at 30.) Where the evidence is overwhelming in support of the jury's verdict, notwithstanding alleged deficiencies of counsel, it is difficult to conclude that there is a showing of prejudice. See Strickland, 466 U.S. at 695-96; Buehl v. Vaughn, 166 F.3d 163, 181-82 (3d Cir. 1999); accord Allen v. Chandler, 555 F.3d 596, 598 (7th Cir. 2009) ("even if counsel's performance was

deficient, [petitioner] was not prejudiced . . . because the evidence of guilt was overwhelming"). As such, petitioner's allegation that Israel's failure to timely retain a private investigator resulted in prejudice to him lacks substance.

The Court of Appeals for the Third Circuit, affirming petitioner's sentence on appeal, found that "the jury's verdict convicting petitioner on both counts was supported by substantial evidence." Brookins, 413 F. App'x at 514. With no reasonable probability of a different outcome discernible, petitioner's argument that he was prejudiced by Israel's failure to hire a private investigator earlier in the proceedings must fail because the evidence against petitioner was otherwise overwhelming. Petitioner, therefore, is not entitled to relief on the ground of ineffectiveness of counsel for failure to hire timely a private investigator.

### 4. Ground Three: Failure to Request Immunity

The third ground for petitioner's § 2255 motion is that Israel "was ineffective for not requesting that the court grant use immunity to defense witness William Quarrels ("Quarrels")." (ECF No. 129 at 10.) Petitioner argues at length that Quarrels should have been granted use immunity in order to vindicate petitioner's constitutional right to a fair trial. See Gov't of Virgin Islands v. Smith, 615 F.2d 964, 971 (3d Cir. 1980) (ECF No. 129 at 10-13.) Petitioner asserts that sometime before trial, Israel contacted Quarrels to testify on behalf of petitioner, and alleges that at that time Quarrels was willing to testify. (Id. at 10.) Petitioner asserts that Quarrels was "suddenly interviewed [sic] by the government a month before trial…at which time he gave a proffer statement." (Id.) Petitioner alleges that subsequent to this interview, Quarrels refused to testify at petitioner's trial and asserted his Fifth Amendment right against self-incrimination. (Id.) At the pretrial conference, the government stated:

> GOVERNMENT COUNSEL: "Within the past two weeks, the government entertained a proffer from a potential witness for the defense named William

Quarrels. In that proffer, Mr. Quarrels made mention of certain incriminating conduct by the defendant, as well as a witness in the case named Dolores Woods. Okay. Specifically, Mr. Quarrels, I believe said, that in the past he has, in fact, purchased over a hundred times crack cocaine from the defendant, Mr. Brookins, and on occasion from Dolores Woods, who is a material government witness.

(TT 5/8/09 at 33-34.)

At that time, Quarrels' defense counsel addressed the court, stating that he represented Quarrels in an action pending before the court, known as the "Terrance Edwards Indictment." United States v. Edwards, No. 08-CR-00376 (W.D. Pa. Oct. 28, 2008). (TT 5/8/09 at 34-35.) Quarrels' defense counsel stated that upon counsel's advice, Quarrels would assert his Fifth Amendment right if called to testify. (TT 5/8/09 at 35.) The government asserted that it did not intend to call Quarrels to testify and that it would not be appropriate to call him to testify if he intended to assert his Fifth Amendment privilege because the jury would draw an adverse inference from that assertion, which would be "highly improper." (TT 5/8/09 at 36.)

Under 18 U.S.C. § 6003, a court may grant immunity to a defense witness generally only "upon the request of the United States attorney for such district." 18 U.S.C. § 6003. Nevertheless, despite "our governmental system's strong tradition of deference to prosecutorial discretion" in granting statutory immunity, the Court of Appeals for the Third Circuit has recognized two instances in which a defense witness may be granted use immunity in the interest of due process. United States v. Herman, 589 F.2d at 1203. First, if the court finds prosecutorial misconduct in the form of "the government's deliberate intent to disrupt the fact finding process," the court should order the government to grant the defense witness statutory immunity or face a judgment of acquittal. Smith, 615 F.2d at 974. Second, even in the absence of prosecutorial misconduct, the court has the inherent power to grant a witness immunity where a defendant is deprived of testimony that is "essential to an effective defense;" that is, where the witness can offer testimony "which is clearly exculpatory and essential to the defense case and when the

government has no strong interest in withholding use immunity." Smith, 615 F.2d at 974. "[W]hether judicial immunity is warranted is a matter to be determined by the district court in the first instance." Id.

Here, petitioner did not allege sufficient facts to support his argument that Quarrels should have been granted use immunity at trial. With respect to the first instance in which due process requires that a defense witness be granted prosecutorial immunity, petitioner failed to allege any facts to support the conclusion that the government's decision not to provide use immunity to Quarrels was made with the "deliberate intention of distorting the judicial fact finding process." Smith, 615 F.2d at 968. Absent this type of prosecutorial misconduct, a defendant is foreclosed from insisting that statutory immunity be granted to his witness. Id. Petitioner's allegations that "Quarrels was under pressure by the government" and "only after being interviewed by the government did Quarrels assert his Fifth Amendment right" (ECF No. 129 at 11) are inaccurate. Quarrels asserted his Fifth Amendment right upon the advice of his defense counsel because of pending charges against him. (TT 5/8/09 at 35.) As such, the government did not intentionally distort the trial process by preventing Quarrels from testifying at petitioner's trial.

With respect to the second instance, the Court of Appeals for the Third Circuit has held that a court's ability to grant immunity is triggered "not by prosecutorial misconduct or intentional distortion of the trial process, but by the fact that the defendant is prevented from presenting exculpatory evidence which is crucial to his case." Id. Immunity will be denied if the proffered testimony is found to be ambiguous, not clearly exculpatory, cumulative, or if it is found to relate only to the credibility of the government's witnesses. Smith, 615 F.2d at 972. Petitioner's assertion that Quarrels' proffered statement that he "occasionally purchased crack

from Woods" because "during that time Brookins was using drugs and unable to sell them," is not, as he states, "clearly exculpatory" because it does not mean that petitioner *never* sold crack to Quarrels. Petitioner asserts that "Quarrels purchased crack from Ms. Woods in the absence of Mr. Brookins."(ECF No. 129 at 8.) The court cannot agree with petitioner's argument that Quarrels should have been granted use immunity at trial because these statements are not "clearly exculpatory" and "essential to an effective defense." Smith, 615 F.2d at 974.

Even if Israel had requested that the court grant use immunity to Quarrels, the court would not have granted such immunity due to the absence of prosecutorial misconduct by the government and lack of "clearly exculpatory" evidence. Counsel is not ineffective for failure to raise a meritless claim. Sanders, 165 F.3d at 253. Petitioner fails to make the required showing that there is a reasonably probability that, but for Israel's failure to request that the court grant use immunity to Quarrels, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. Petitioner, therefore, is not entitled to relief on the ground of ineffectiveness of counsel for failure to request use immunity of a defense witness.

### 5. Ground Four: Failure to Have Search Warrant Properly Analyzed by a Handwriting Expert

The fourth ground for petitioner's § 2255 motion is that Israel "was ineffective for not having the search warrant properly analyzed by the handing writing expert." (ECF No. 129 at 13.) Petitioner asserts that Israel requested the handwriting analysis of only the district judge's signature on the warrant, instead of having the entire document examined pursuant to petitioner's request. (Id.)

In evaluating the prejudice prong of Strickland, petitioner did not demonstrate a reasonable probability that, but for Israel's failure to have the *entire* search warrant "properly" analyzed by the handwriting expert, the result of the proceeding would have been different. See

Williams, 529 U.S. at 391 (citing Strickland, 466 U.S. at 694). Petitioner asserts vague and conclusory allegations that "had counsel requested that the expert examine not only the signature of the warrant, but all of the handwriting of the warrant, and it revealed that the writing was not the district judge's handwriting, then the warrant would be issued without probable cause." (ECF No. 129 at 13.) Conclusory allegations are not sufficient to support a motion under § 2255. Blackledge v. Allison, 431 U.S. 63, 97 (1977).

Prior to trial, this court granted petitioner's motion to retain a handwriting expert or document examiner to verify signatures on the search warrant (ECF No. 54) and petitioner's motion to compel District Judge John Bova to provide examples and samples of his handwriting to such expert so she can properly complete her analysis. (ECF No. 64.) Petitioner's argument that the handwriting on the search warrant should have been analyzed in its entirety is not sufficient "to undermine confidence in the outcome" because the expert's verification that Judge Bova's handwriting samples matched the signature on the search warrant does not suggest a lack of probable cause. Petitioner fails to set forth specific facts or evidence to suggest that but for Israel's error in not requesting that the search warrant be analyzed in its entirety, the result of the proceeding would have been different. See Williams, 529 U.S. at 391 (citing Strickland, 466 U.S. at 694). Petitioner's arguments are largely bald conclusions which cannot support a § 2255 motion. See Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010). Petitioner, therefore, is not entitled to relief on the ground of ineffectiveness of counsel for failure to have the search warrant "properly" analyzed by a handwriting expert in its entirety.

### 6. Ground Five: Failure to Review Phone Recordings and Make Recordings Available for Defendant's Review

The fifth ineffective assistance of counsel ground asserted in petitioner's § 2255 motion is that Israel "was ineffective for not reviewing the authenticity of the recorded telephone

conversations used by the government as evidence at trial, and for not making the recorded calls available to him for his personal review at pre-trial." (ECF No. 129.) Petitioner basis his lengthy argument on the Court of Appeals for the Third Circuit decision in <u>United States v. Baynes</u>, 687 F.2d 659 (3d Cir. 1982). Petitioner's reliance on <u>Baynes</u>, however, is misguided. In <u>Baynes</u>, "defendant's counsel did not listen to a voice exemplar obtained from defendant [Trice] or compare it to a recorded conversation that was the basis of the case against defendant." <u>Id.</u> at 662. "Although 'substantial evidence' was proffered at trial against each of his [Trice] co-defendants, the 'Government's *entire* case against Trice was predicated on an electronically intercepted telephone conversation of merely twelve words allegedly involving Trice, and implicating him in the drug conspiracy.'" <u>Id.</u>

> On his habeas appeal, Trice contended that, despite his repeated urgings, his defense counsel had made no attempt to listen to the exemplar and compare it with the Government's intercepted recording. Trice insisted that it was not his voice on the telephone recording and that any diligent investigation by his lawyer would have revealed this fact and led to Trice's exoneration by the jury. Rather than conduct such an investigation, Trice's counsel did nothing with respect to the exemplar, choosing instead to cross-examine the officer at trial who identified the voice on the intercepted recording as belonging to Trice.

<u>Id.</u> at 662-63. The instant case is distinguishable from <u>Baynes</u> on two grounds. First, the government asserts in its response, and petitioner concedes in his § 2255 motion, that the government produced, prior to trial, one or more CDs containing recorded jail calls between petitioner and government witness Woods. (ECF No. 127 at 15.) Petitioner makes one vague allegation that Israel, "like counsel in <u>Baynes</u>, was ineffective because he refused to investigate." (ECF No. 129 at 14.) Second, the recorded telephone calls between petitioner and Woods were not the "entire basis" of the government's case against petitioner. The evidence of petitioner's guilt adduced by the government during trial was overwhelming. <u>Brookins</u>, 413 F. App'x at 514.

In the instant case, petitioner does not set forth facts sufficient to support his vague allegation that Israel "refused to investigate." Petitioner asserts that Israel never explained to him "that when the government attempts to admit a sound recording into evidence, the government has the burden of producing clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such telephone recording." (ECF No. 129 at 13-14.) Petitioner argues that "it was later learned the recorded telephone calls obtained at the Alleghany County Jail ("ACJ") were mishandled by County officials" and that "portions of the recorded calls used at petitioner's trial were inaudible." (Id. at 14.) Petitioner, however, fails to allege facts to support the conclusion that the recorded telephone calls at issue were "mishandled."

Petitioner's vague allegations may be resolved solely based upon the lack of the required prejudice. Petitioner does not set forth facts sufficient to show that Israel did not listen to the recorded telephone conversations that were provided by the government prior to trial. Even if Israel were assumed deficient for failure to review the recorded conversations prior to trial and for failure to explain the government's burden to petitioner, in light of the overwhelming evidence presented by the government during trial, this failure cannot be said to effect a reasonable probability of a different outcome. Williams, 529 U.S. at 391 (citing Strickland, 466 U.S. at 694). The court cannot conclude that petitioner was prejudiced by the actions of counsel under these circumstances. See Strickland, 466 U.S. at 695-96; Buehl, 166 F.3d at 181-82; accord Allen, 555 F.3d at 598 ("even if counsel's performance was deficient, he [petitioner] was not prejudiced…because the evidence of guilt was overwhelming"). Petitioner, therefore, is not entitled to relief on the ground of ineffectiveness of counsel for failure to review phone recordings.

None of petitioner's arguments referenced above are sufficient to "undermine the confidence in the outcome." Strickland, 466 U.S. at 694. Had Israel raised the issues suggested by petitioner and performed more to petitioner's satisfaction, there is still not a reasonable probability of a different outcome. The motion and the files and records of the case conclusively show that petitioner is not entitled to relief based upon his claims grounded on ineffective assistance of counsel.

## C. Prosecutorial Misconduct Claim

To establish that the prosecution's suppression of evidence constituted a due process violation under Brady, "'a defendant must show: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment.'" United States v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005) (quoting United States v. Dixon, 132 F.3d 192, 199 (5th Cir. 1997)). Evidence is material if there is a "reasonable probability" that, had the evidence been disclosed to the defense, the result of the underlying proceeding would have been different. Strickler v. Greene, 527 U.S. 263, 280 (1999) (citing United States v. Bagley, 473 U.S. 667, 682 (1985)). Establishing materiality does not require a showing by a preponderance of the evidence that the suppressed evidence would have resulted in acquittal. Kyles v. Whitley, 514 U.S. 419, 433 (1995). Materiality is determined by viewing the cumulative effect of the evidence instead of considering the value of each individual piece of evidence in isolation. Id. at 436-37.

In Brady, the Supreme Court decided its first case in a long line of precedent that considered a prosecutor's duty to disclose evidence during the discovery phase of a criminal trial. Brady, 373 U.S. at 87. The Court in Brady held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is

material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution." Id. The holding in Brady that requires prosecutors to disclose exculpatory evidence favorable to the accused extends to impeachment evidence. Giglio v. United States, 405 U.S. 150, 153-54 (1972). In later cases, the Court held that a prosecutor also has a duty to disclose potential exculpatory or impeachment evidence favorable to the accused even when there is no request by the defendant. United States v. Agurs, 427 U.S. 97, 106-07 (1976); Bagley, 473 U.S. at 682 (stating suppression of Brady/Giglio material may occur regardless of whether the defendant makes a "specific-request" and "general or no-request" for favorable evidence). The Court subsequently held that "a defendant's failure to request favorable evidence did not leave the Government free of all obligation," and a Brady violation might arise "where the Government failed to volunteer exculpatory evidence never requested, or requested only in a general way." Kyles, 514 U.S. at 433. Due process requires that the prosecution produce all "exculpatory" evidence, which includes both "[m]aterials…that go to the heart of the defendant's guilt or innocence and materials that might affect the jury's judgment of the credibility of a crucial prosecution witness." United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994) (quoting United States v. Hill, 976 F.2d 132, 134–35 (3d Cir. 1992)).

The requirement that the prosecution disclose such evidence extends not only to information that is actually known to the prosecutors, but also to "all information in the possession of the prosecutor's office, the police, and others acting on behalf of the prosecution." Wilson v. Beard, 589 F.3d 651, 659 (3d Cir. 2009) (citing Youngblood v. West Virginia, 547 U.S. 867, 869–70 (2006)). A prosecutor has a duty to investigate and is responsible for discovering and disclosing evidence in the possession of each person working on the prosecutor's team. Id. at 421. Knowledge or evidence in the possession of a prosecutor's team is

imputed to the prosecutor. Id. Prosecutors are responsible for information known to other lawyers working on their case because "procedures and regulations can be established to carry [the prosecution's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it." Giglio, 405 U.S. at 154 ("The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government."). Thus, a prosecutor's duty extends beyond their personal, actual knowledge to information that the prosecutor "should have known." Agurs, 427 U.S. at 103.

In both his Rule 33(b)(1) motion and § 2255 motion,[9] petitioner alleges that actions by Assistant United States Attorney Gregory Melucci ("Melucci") and Assistant United States Attorney Soo C. Song ("Song") amounted to prosecutorial misconduct. (ECF No. 129 at 2.) Petitioner's allegation of prosecutorial misconduct is that Melucci and Song violated petitioner's due process rights by suppressing material evidence that could be used to impeach the credibility of the government's "key" witness, Woods, in violation of Brady. (Id. at 3.)

Petitioner claims that subsequent to trial pending sentencing, he learned Woods was a subscriber to a cellular telephone which was "tapped" in another drug investigation in the United States Attorney's Office, known as the "Terrance Edwards Indictment." United States v. Edwards, No. 08-CR-00376 (W.D. Pa. Oct. 28, 2008). (Id.) Petitioner asserts that "regardless of whether Woods was involved directly or indirectly with the 'Terrance Edwards Indictment,' the jury had a right to hear evidence that the government's witness was a target in a separate criminal conspiracy." (Id.) Petitioner argues that Woods' "involvement" in the "Terrance

---

[9] For the reasons previously stated in footnote 5 supra, the court will analyze petitioner's Brady claim of prosecutorial misconduct under Federal Rule of Criminal Procedure 33(b)(1), and not 28 U.S.C. § 2255.

Edwards Indictment" constitutes newly discovered evidence, and therefore, he is entitled to a new trial pursuant to Rule 33(b)(1). (Id. at 4.)

Petitioner asserts both Melucci and Song were familiar with the "Terrance Edwards Indictment" before his trial. (ECF No. 128 at 3.) Petitioner asserts that Song resigned from his case in 2009 to pursue the "Terrance Edwards Indictment,"[10] thereby indicating that "the government must have known that Woods was targeted in a federal investigation by its office, as it is their duty to learn of any criminal conduct of its witnesses that may be favorable to the defense." (ECF No. 128 at 3.) Petitioner claims the intentional withholding of Woods' participation in a pending criminal conspiracy establishes the element of suppression of evidence attacking the credibility of a witness in his case, and that this information was "material" because it would have been used to "discredit Ms. Woods' testimony at trial when asked by defense counsel whether she sold 'crack cocaine,' and she replied 'no.'" (Id.)

The government, in its response to petitioner's Rule 33(b)(1) motion, concedes that Woods was a subscriber to a cell phone number for a cellular telephone which was investigated in a separate criminal investigation, and that this information was not provided to petitioner prior to trial. (ECF No. 133 at 17-18.) The government asserts, however, that this information was not provided to petitioner because Woods was neither a "target" of that investigation, nor was her personal cell phone "tapped" in that investigation. (Id.) The government asserts that although the telephone calls between her own cell phone (not the "tapped" one) and the "tapped" cell phone belonging to Andre Carrington were captured, none of those calls reveal Brady exculpatory evidence or Brady impeachment evidence which petitioner could have used at trial to discredit

---

[10] Petitioner's assertion that Song remained on his case until 2009 is inaccurate. As reflected in the docket, Song filed a "Notice of Substitution of Attorney Appearance by Gregory C. Melucci on behalf of USA" (ECF No. 34) on October 15, 2008, and her appearance in petitioner's case was terminated on that same date.

Woods.[11] (Id. at 18.) The government states that Melucci could not have withheld this information since it was not known to him prior to trial because the Affidavit and Application for a wiretap of the particular cell phone number to which Woods was a subscriber were filed "under seal." (Id.) The government argues that it did not disregard its obligation to exercise due diligence in the search for potentially exculpatory evidence since it could not have been aware of the wiretap applications at the time of petitioner's trial.

A prosecutor has a duty to investigate and is responsible for discovering and disclosing evidence in the possession of each person working on the prosecutor's *team*. Kyles, 514 U.S. at 421 (emphasis added). Knowledge or evidence in the possession of a prosecutor's team is imputed to the prosecutor. Id. The government argues that at the time the wiretap applications and affidavits relating to the "Terrance Edwards Indictment" were presented for execution by Song in March 2008 and filed under seal, Melucci was assigned to "white collar" prosecutions and was completely unaware of any drug conspiracy investigations in the office of the violent crimes section. (ECF No. 133 18-19.) Melucci did not join the violent crimes section, a "team" separate from the white collar prosecutions section until or around October 15, 2008, shortly before he replaced Song in petitioner's case. Melucci, therefore, would have no way of knowing about the wiretap applications filed under seal by Song prior to joining the violent crimes section. When Melucci joined the violent crimes team, however, Song's knowledge of the wiretap applications and affidavits filed with the court in the "Terrance Edwards Indictment" was imputed to Melucci. Despite this failure to disclose, however, the government represents that

---

[11] Andre Carrington was a target in the "Terrance Edwards Indictment." United States v. Edwards, No. 08-CR-00376 (W.D. Pa. Oct. 28, 2008). The government asserts that he is also the father to one of Woods' children, (ECF No. 133 at 20), and that Woods was the subscriber, but not the user, to "target cellular phone 4." (Id. at 19.) The government asserts that Woods had her own cell phone with a telephone number different than the target cell phone, and her cell phone was not being intercepted during the "Terrance Edwards Indictment." (Id. at 20.)

it did not "suppress" *material* exculpatory evidence within the meaning of Brady because Woods was neither a "target" of such wiretap application nor a suspect in the "Terrance Edwards Indictment."

Even if the information concerning Woods' alleged "involvement" in the "Terrance Edwards Indictment" is deemed to have been suppressed, it was certainly not "material" for the purposes of Brady. As the Supreme Court in Brady stated, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. The Supreme Court defines materiality as a "reasonable probability" that disclosing the evidence to the defense during discovery would have changed the result of the proceeding. Bagley, 473 U.S. at 682. A "probability" is "reasonable" when it reaches a level high enough to undermine the confidence in the jury's verdict. Id.

There is not a reasonable probability that the information with respect to the cellular phone tapped in the Edwards case, if used to impeach Woods, would have changed the outcome of petitioner's trial. As stated infra, Woods was prosecuted by the Allegheny County District Attorney's Office in the Allegheny County Court of Common Pleas for possession with intent to deliver a narcotic for the events that took place on February 7, 2007 and was awaiting trial on those charges. Woods testified with respect to those charges at petitioner's trial. (TT 5/13/09 at 34.) Despite hearing evidence with respect to the pending charges against Woods for her involvement in the events underlying petitioner's case, the jury convicted him. It is highly unlikely, therefore, that evidence with respect to the Edwards case, if offered to impeach Woods, would have changed the outcome of petitioner's case because that evidence is of considerably less probative value than the evidence with respect to the state charges against Woods.

First, the court records show that unlike the state case, Woods was not a named defendant in the indictment or the superseding indictment in the <u>Edwards</u> case. <u>See</u> Indictment at 1, <u>United States v. Edwards</u>, No. 08-376 (W.D. Pa. Oct. 28, 2008), ECF No. 1; Superseding Indictment at 1-2, <u>United States v. Edwards</u>, No. 08-376 (W.D. Pa. Aug. 21, 2009), ECF No. 658. Second, unlike the events underlying the state charges against Woods, there are no allegations that the events underlying the "Terrence Edwards Indictment" were related to the charges tried against petitioner at his trial. Under those circumstances, even if petitioner had been provided the information with respect to Woods' limited involvement with the <u>Edwards</u> case prior to trial, there is not a reasonable probability that the result of the proceedings would have been different. <u>Bagley</u>, 473 U.S. at 682. Thus, petitioner will not be granted a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure because the facts upon which he relies are insufficient to support a claim for a due process violation under <u>Brady</u>.

## D. Trial Court Error Claim

In his § 2255 motion, petitioner contends that this court violated his Sixth Amendment rights by limiting his ability to cross-examine government witness Woods regarding "bias" and "motive." (ECF No. 122 at 5 and 129 at 4-5.) Petitioner, however, did not raise this issue on direct appeal to the Third Circuit Court of Appeals. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,'…or that he is 'actually innocent.'" <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 485 (1986); <u>Smith v. Murray</u>, 477 U.S. 527, 537 (1986); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977)) (internal citations omitted). Brookins never addresses the reasons his claim of trial court error was not advanced on appeal. The "cause and prejudice" branch of the <u>Bousley</u>

test is, therefore, not met. The only remaining question here is whether Thompson established his "actual innocence." "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995) (internal citations omitted)). Petitioner did not set forth evidence sufficient to support a finding that no reasonable juror would have convicted him, and as discussed supra, in affirming petitioner's conviction on appeal, the Court of Appeals for the Third Circuit found that "the jury's verdict convicting petitioner on both counts was supported by substantial evidence." Brookins, 413 F. App'x at 514. Under those circumstances, petitioner did not set forth sufficient factual allegations to show his actual innocence. Petitioner, therefore, waived his trial court error claim by failing to raise it on direct appeal to the court of appeal. He will not be granted a new trial on that basis.[12]

---

[12] Even if petitioner did not waive his claim by failing to raise it on direct appeal, he is not entitled to a new trial on that basis. Petitioner asserts that his defense counsel, Israel, tried to explore the witness's testimony for bias and motive by asking whether the arresting officers questioned her about "other crimes of violence (in which she may have concealed information about)." (ECF No. 129 at 5.) When Israel attempted to cross-examine Woods about whether arresting officers questioned her about "other shootings and homicides" an objection was raised, and addressed at sidebar. (TT 5/13/09 at 49.) This court stated that this line of questioning "would be confusing to the jury, and also put her [Woods] in an embarrassing situation, and it's not really relevant to the underlying incident." (TT 5/13/09 at 51-52.) Under Rule 403 of the Federal Rules of Evidence, the court, within its discretion, may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FED. R. EVID. 403. This court exercised proper authority in limiting this line of questioning during cross-examination because the information's probative effect was substantially outweighed by a danger of confusing the issues and misleading the jury. Petitioner's claim that this court violated his rights guaranteed by the Sixth Amendment, therefore, will be denied.

## V.    Conclusion

For the reasons set forth above, petitioner's motions will be denied. The motions, files, and records of this case show conclusively that petitioner failed to demonstrate prejudice. Under those circumstances, there is no reason to conduct an evidentiary hearing to consider petitioner's claims.

## VI.    Certificate of Appealability

When a district court issues a final order denying a § 2255 motion, the court must also make a determination about whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination about whether a certificate should issue.  See 3rd Cir. LAR. 22.2.

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

Based upon the motion, files and records of the instant case, and for the reasons set forth above, the court finds that petitioner did not show a denial of a constitutional right.  Therefore, a COA should not issue.

## VII.    Order

An appropriate order will be entered.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc:    Anthony Brookins, Reg. No. 09087-068
       Federal Correctional Institution McKean
       P.O. Box 8000
       Bradford, PA 16701